The Honorable, the United States Court of Appeals for the First Circuit is now in session. All persons having any business before this Honorable Court may give their attendance and they shall be heard. God save the United States of America and this Honorable Court. The Court is in session. Today's cases will be called as previously announced. The times will be as allotted to 3-6. Attorney Sanchez, please introduce yourself for the record and proceed with your argument. Raymond Sanchez-Maceira on behalf of Mr. Thomas Canelo. And we are respectfully alleging to the Court that the Court should reverse this sentence based on abuse of discretion and standard of review. The sentencing hearing shows that the counsel was not, uh, did not have the opportunity to raise the issues that I'm raising in my brief since the Court departed after I abused her. I have cited in my briefcase law from the First Circuit that when this happens, the Court allows to review under abuse of discretion standard. Also, I am alleging to the Court that the Court used certain photographs. When she made, uh, for the enhancement, those photographs, I believe, were not part of the record. They have never been seen. And I believe there was error for the Court to, uh, infer bad conduct from those pictures. First, the PSR only mentions that it seems like this individual had a pistol and a rifle. It seems. When we reviewed the discovery, I was not, the district, where I was not the attorney at the sentencing hearing, but I did receive the evidence. And those photographs, well, they don't show what the Court was inferring. But the issue is that nobody has seen those pictures. I respectfully believe that the pictures do not show what the Court was using to enhance this individual's sentence. We know he was a prior illegal in the United States. We know he had a lot of money with him at the time of the, uh, offense. But there is nothing on the record here. And this individual deserves to have this, uh, sentence and to be confronted. This, the judge at the sentencing transcript shows, page 10, shows that he gave a weight to the pictures that were found on this individual. What did you mean? You said the photographs were never part of the record? I didn't understand. What do you mean by that, that they were never presented? Judge, the issue is that they were never presented to the Court. I mean, she might have, um, discussed it with the probation officer. They were not part of the pre-sentence report? No, sir. They were not part of the pre-sentence report. Hint, was to the fact when, at the last page, when they say that, Judge, you might use this to increase the sentence, it was that the fact that some extractions of the cell phone show that this individual had in the past what it seems to be a weapon, what it seems to be a rifle. That's about it. Now, Judge, in preparation for this hearing today, I noticed when I was rereading the sentencing transcript, I noticed in the sentencing hearing when the judge was using the photographs, um, she mentioned... I want to try, are you saying that you did not handle the sentencing yourself? Is that correct? That's correct, Your Honor. So you're saying that you now understand that those photographs were introduced for the first time at the sentencing hearing without any prior disclosure to the defendant or defense counsel? Is that what you're saying? Your Honor, what I'm saying is that at page nine of the sentencing hearing, the last, I believe it's line 20, the judge mentions that the pictures were taken large sum of money in the same room. Now, Judge, there's nothing in the record. There's no pictures presented to the judge. I mean, there's nothing here that the attorney that was present during the sentencing to make him aware of the fact that the judge was going to use those sentences as she used them. Counselor, it's still unclear exactly what you're saying. Are you saying that the photographs physically were not present at the sentencing date? Yes, ma'am. They were never presented to the judge. So you're saying that they were specifically referenced in the PSR, though? Yes, ma'am. They were referenced in the PSR, but they were never presented to the judge. Okay, so you're saying the judge never saw the photographs? No, ma'am. No, ma'am. Well, how is the judge describing what she sees in those photographs? Is she not? I mean, so where is she getting that description from? Apparently, she's getting the description when she meets with the probation officer because she correctly identified that there are some pictures there. She repeats what the PSR is stating, but she goes further on and she goes further into it. You're describing something pretty serious here that there was a meeting between the probation officer and the judge where the probation officer showed the judge pictures that were never part of the PSR, that were never disclosed to defense counsel, and the judge then used those pictures never disclosed to draw an inference about your client's past participation in a similar activity. Do you even make that argument in your brief? Let me be very specific, Judge. The pictures were provided in discovery. The defendant had them. What I'm trying to make to the court is, Judge, that the presentence report, the presentence officer usually, and this is very common, they meet with the judge, they discuss what the presentence report is stating. Wait a minute, so they were given to the defendant in discovery, the photographs, so defense counsel had the photographs and was aware when the judge referenced them what she was referring to. Yes, he knew exactly, the defendant's lawyer knew exactly that they have the pictures. That's correct, Your Honor. But I don't understand the problem. Man, the problem, Your Honor, is the fact that the judge, when she's inferring further unlawful conduct, that is not depicted in the pictures. The same moaning, the same weapon, that is what the pictures were showing to the judge. So there was a picture of your client with a rifle, is that correct? What appeared to be a rifle, yes, ma'am. And you're saying that what it appears to be, the judge didn't have a right to assume that what it appeared to be was what it appeared to be? No, ma'am. I am saying what the reasoning of the judge was flawed in the fact that she inferred further unlawful conduct from what she was describing in those pictures. So are you somehow saying that, assuming your client is photographed with a rifle, and given the length of time he was in the United States, that photograph somehow depicted him somewhere else in another country, perhaps, or another state, where he could legally, as a felon, possess those weapons? Your Honor, what I'm saying is that the pictures that were provided to the defense, that the judge was referring to, do not propose or do not reflect what the judge was inferring. For example, Your Honor, all the pictures are what the defense was stating, or the defense will state, are the money that was the same money that was taken, the same weapons. He took multiple pictures of himself, a selfie. And what we're saying is this is the same conduct that was already taken in by the Sentencing Commission and the guidelines. Well, counsel, when he was arrested, he had a pistol in his possession, did he not? Yes, sir. One of the photographs, he's photographed with a rifle, not a pistol, right? He used one of the photographs as a rifle, correct, Your Honor? And he acknowledges that he participated, he acknowledged that at least on one other occasion, he participated in this kind of activity, that is, transporting large sums of money as part of a drug trafficking scheme. He acknowledged that he did it at least once before, right? Yes, sir. Okay. But what I'm saying, Judge, is that the judge hearing, the sentencing hearing transcript, reflects all the power of the enhancement was referring to some pictures that the attorney or the defendant had no opportunity to rebut the influence that the judge was making. For example, I took the pictures. He said, I took the pictures and those pictures reflect x and y, but you're not giving me the opportunity, at least because all the allocutions are already passed. The sentence, I believe, one of the sentences had already, she imposed sentence, but she continues at the end of the sentencing hearing when the bodies approach. She includes saying, well, I believe that you were meddling with other people in drug trafficking, et cetera, et cetera, and the defendant was never given an opportunity to rebut that influence that the judge was making. I mean, and those inferences were not placed in the TSR. Did counsel object to those statements or ask the judge to reconsider or present arguments as to why the judge couldn't consider it? Your Honor, what I got from the sentencing hearing was that the counsel approached, but he requested some sort of reconsideration based on candor by the defendant when he was arrested for the specific objections that I am making in my brief. But there was nothing that prevented counsel when he approached or she approached to talk about cooperation that would have also been an opportunity for him to object, or I don't know if it's a male or female attorney, but for the attorney to have objected. He was a male judge, but the issue is that as the court he was approaching, this sentencing hearing at page 13 and 14, when we read the sentencing transcript, the judge said, well, reconsideration denied, and that's it. That's because the only thing he said when he approached was to take into consideration cooperation. He didn't put any other objections on the record or make any other requests. Correct, Judge. He didn't make any other objections, and we have to live with those facts. But what I'm saying is that this court, Your Honor, have considered cases where the attorney after allocution, this is something that happened, the allocution, the judge imposed sentence already, and the court has allowed for us to be reviewed under abuse of discretion standard, and I have cited cases in my brief. What I'm saying, Judge, is this is a serious situation where the defendant is not allowed to rebut the inference that the judge made of reviewing those pictures. He didn't have the opportunity to say, listen, Judge, well, this is not reflecting. This is the same pistol, the same weapon, same money. I took these selfies. This is not something that reflects the inference that the judgment, and he should have that opportunity. Counsel, didn't the judge in explaining her sentencing decision and deciding to go to a 30-month sentence instead of the that she felt that your client was involved in an ongoing basis in the kind of activity that he was arrested for? I mean, she took that into consideration along with his possession of illegal firearms. So just from her explanation, counsel knew that his possession of the firearm was a big part of the sentence from her point of view, plus the fact that she had concluded that he was involved in this activity more than once. Why wouldn't that have been an occasion for counsel to object to the inferences that she was drawing about his ongoing activity? I mean, even if she didn't refer specifically to the pictures, I don't remember whether she did or not. Counsel knew that she thought that she was dealing with who was involved in criminal activity on an ongoing basis. He could have objected. Where do you get that, Judge? How do you draw that conclusion? Yes. The issue here is that the judge put so much emphasis, and she didn't put emphasis on the money. She put so much emphasis on those pictures that when she, at the end of the sentencing hearing, when she is finally denying the reconsideration, she says, well, it seems like this involved people trafficking weapons and drugs. I mean, how can you go from the pictures which she never saw, and those are described to her by the probation office, as to going into that inference, which the defendant, Judge, never had an opportunity to report because this is a PSR state is something, but not defined more. Okay, Counsel. Are there other questions from the judges? No, thank you. All right. Thank you, Mr. Sanchez. If you would go ahead and mute your audio and video. Please introduce yourself on the record, Mr. Klumper. May it please the court. Thomas Klumper on behalf of the United States. In this case, the government's position that one, the defendant waived these arguments that he's presenting now, especially regarding the use of the firearms and the sums of money that he was seen with in the picture because the PSR expressly stated, according to the HSI digital forensic report regarding digital extraction. I mean, the defendant was on page five of the PSR, was expressly informed of this report, and he even concedes on appeal. He was given this report in discovery. It was a report, not just a picture, but a report was given. And in those reports, there were pictures as well as timeframes. But your honor, in this case. Can I ask you a question about that, Counsel? If the photographs that include money and the weapons were referenced in the PSR, were included in the PSR, were they not already taken into consideration in the PSR either as relevant conduct or otherwise? No, I don't think it was. It wasn't taken into consideration as relevant conduct because they just took this one time offense. And because of the photos were way past in the previous, in the past, the court didn't consider it as relevant conduct. Plus, if you look at it. No, but why does the PSR not reference them so that they would be part of the sentence, the guideline sentence? Because in this case, you have to look at it, look at the difference. One was a pistol versus a rifle in the past. I mean, there is no connection, let's say at this point as relevant conduct related to the PSR. Does the probation officer make any recommendation to the judge in the PSR about what to do about this additional information, this additional evidence in terms of sentencing? Is there a suggestion that this would justify a variant sentence? Yes, it did, Your Honor. If you go to page 14 of the PSR, what it expressly cited, if you look at the 3553A factors, one of them for deterrence, criminal history, it does say, according to the digital extraction conduct by HSI, conducted by HSI, excuse me, from the cell phone, the defendant has been in possession of what appeared to be a pistol and a rifle in the past, along with substantial sums of money as per the photos obtained from the cell phone. So it does recommend as a potential outside the guidelines, advisory guidelines, adjustment. But the government also had all of this information for quite a long period of time, did it not? During plea negotiations, etc. Yes. But it's not reflected in the sentence that's recommended. Because, Your Honor, in this case, we had agreed to a 10-month sentence, it would have basically lip service if we would have presented additional evidence or any factors like the report or anything. And anyway, in this case, the probation officer and the court had the report already as indicated. But is there any serious argument that the government would not have known that the judge was likely to give a variant sentence? In this case, that's why it's the defendant was informed he was left to the discretion of the court what sentence would be given. But that's before the PSR is prepared. Correct. But everybody, but the government at least knows that there's all this additional information. And sure enough, as night follows day, the PSR, you say, recommends that maybe the judge should that wasn't taken into account in the plea negotiations. But in fact, the government was aware of them. There's something about this that I find unsettling. I'm not casting aspersions. I just don't like the result. Well, Your Honor, that is, I mean, the defendant accepted the plea, it was aware of the potential for this 3553A factor. And he was informed at the change of plea that it would the court could consider other conduct. So he wasn't caught off guard. He was aware that this could be a potential, he could get a potential variance because of court's discretion. And in this case, that is why. Well, let me, let me, let me spell out what I think is unsettling, because what we're witnessing in this case is happening in seemingly a lot of cases out of Puerto Rico, which is that there's a negotiated plea agreement at a certain lower level. But there seems to be a general understanding that the sentencing judges very seldom go along with the low recommendations. So it's sort of everyone knows that even though the defendant may rely on the plea agreement, that that's not really what's going to happen when sentencing time comes around. That's what's unsettling for me, which is the government had this information, but still entered into an agreement at 10 months. Well, so did the defendant in this case and was aware of the information as well as, as aware that the 3553A factors would come into effect. If he wanted, he could have gone to trial then if he didn't think he would get a sentence he thought would be an appropriate sentence in this case. I mean, it's the government's position that it offered this deal. He accepted, understood the consequences at the time. And in this case, the court used information based on the digital extracted report to enhance the sentence because it found him have been involved in more than, more than once. And contrary to what brother counsel stated, he relied substantially on admitted in the past of doing it more than once, transferring money or transporting money. Counsel, the defendant filed a sentencing memorandum of his own. Is that correct? That is true, Your Honor. Okay. And did the defendant, so in doing that, he was aware of the description in the probation office report about the, there was a description of the photographs and what they showed. Is that correct? Correct, Your Honor. And did the probation office opine that those photographs suggested that he had been involved in other conduct like this on other occasions? Did it say something to that effect? But, well, yes, what it stated was, as I stated in the past, it appeared with pistols and rifles along with, and then also substantial sums of money. And counsel did not write. I'm sorry, did it go on? What else? I'm sorry. In addition to describing that, did it draw any conclusion about the significance of these pictures in terms of his ongoing involvement in this kind of criminal activity? Did it say anything like that? No, it just left it generally to the discretion of the court to take this information because it also gave information to the court that also his education, his financial difficulties, and he's worked and been married, so it gave the court an opportunity to look at both sides of the picture, too. And in this case, the court decided on the flip side that it found this offense. What it focused on at the beginning was this guy had over $300,000 and a weapon. That is what it primarily focused on, which is the nature of the offense in this case. And then it threw out, okay, he had in the past substantial sums of money and also prior weapons. Okay, so in the defendant's sentencing memorandum, did he say anything about these pictures? Did he take issue with them in any way? Did he suggest that no inferences should be drawn from them? Did he say anything about the pictures? Nothing at all that I recall from reading the sentencing memorandum. Did not even address it. It just addressed under the 3553 factors about regarding family, wife, and other factors like that. And it had an opportunity to address it, and in this case, he didn't. Also, when at sentencing, he had another opportunity, and actually a third time at the end of sentencing, instead raised the candor issue in this case. Counsel, I'd like to ask you a question about the community-based factors. I'm aware of our precedent, of course, that blesses that as a consideration under 3553A. But my question is this. Do you happen to know whether there has ever been sort of a full-throated explanation by one of the district court judges in the district along the lines of Kimbrough, where in the end, the district court judge says, for Puerto Rico's purposes, that the sentencing commission has not adequately, does not have an appropriate policy. Do you know, are you aware of that sort of an opinion being out there? Because what I tend to see a lot of are references to newspaper reports, comments like it's well-known, that sort of thing. And I've never really, at least I haven't run across something that was similar to what was done in Kimbrough. Are you aware of anything? At this point, off the top of my head, not that I recall. I think there may have been, Fuste one time did, was it Gonzales Rodriguez? May have, because that's why he put down to the effect in, not during Kimbrough, but it announced why we lived in developments and urbanizations because of the crime problem in Puerto Rico that I recall. Thank you. Other opinions, not off the top of my head, your honor. Are there other questions from the judges? No, thank you. All right. If not, we will take the case under advisement. We'll rest on the breeze. Thank you. Thank you. That concludes argument in this case. Attorney Sanchez and Attorney Klemper, you should disconnect from the hearing at this time.